UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JORDAN BAUTISTA,

        Plaintiff,

v.

                                              Case No. 5:18-cv-503-Oc-34PRL

JAMES TAYLOR,

       Defendant.

## ORDER

### I. Status

Plaintiff Jordan Bautista, a federal inmate incarcerated at the United States Penitentiary (USP) in Terre Haute, Indiana, initiated this action on September 27, 2018, by filing a Complaint (Doc. 1). He filed an Amended Complaint (Doc. 6) on November 16, 2018, and a Second Amended Complaint (SAC; Doc. 13) on January 28, 2019. In the SAC, Bautista asserts claims pursuant to Bivens[1] against James Taylor, a deputy captain at the USP in Coleman, Florida. He alleges that Defendant Taylor violated his First Amendment right when he enacted a policy banning publications, such as magazines, newspapers, and books, for special housing unit (SHU) inmates. He states that the publication ban isolated him from the outside world for almost one year, which resulted in "a severely deteriorated medical condition" and "isolative effects" on his autism spectrum

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

and post-traumatic stress disorders and depression. SAC at 5.[2] As relief, he requests monetary damages.

This matter is before the Court on Defendant's Motion to Dismiss (Motion; Doc. 29) with exhibits (Doc. 29 at 12-35). The Court advised Bautista that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 24). Bautista filed a response in opposition to the Motion. See Plaintiff's Response to Defendant Taylor's Motion to Dismiss (Response; Doc. 30). Thus, the Motion is ripe for review.

## II. Plaintiff's Allegations[3]

As to the underlying facts, Bautista asserts that Deputy Captain James Taylor enacted a policy that prohibited SHU inmates from obtaining or possessing publications. See SAC at 5. According to Bautista, in December 2017, he was not permitted to receive magazines, newspapers, or books, some of which he had ordered before the policy's enactment. See id. He states that the SHU was filled to "capacity," and believes the policy was enacted to make the SHU conditions "extremely uncomfortable" in an effort to "discourage" inmates from seeking protective custody. Id. He describes his isolated cell as "a square, concrete, windowless box" where he sat for almost one year "with no

---

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The SAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

2

concept of any current events." Id. He avers that he was despondent, highly irritable, depressed, and "even suicidal" as a result of the isolation. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal")

(internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV. Summary of the Arguments

In the Motion, Defendant requests dismissal of Bautista's claim against him because Bautista failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant Bivens lawsuit. See Motion at 3-5. Next, he maintains that Bautista is not entitled to compensatory and punitive damages

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

4

under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendant's acts and/or omissions. See id. at 5-6. Finally, Defendant argues that the application of the Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), test precludes Bautista's First Amendment claim. See id. at 6-10. In his Response, Bautista maintains that he exhausted the administrative grievance procedures to the extent they were available to him. See Response at 3-5. Next, he argues that the Abbasi case is distinguishable from the instant action. See id. 1-2. He asserts that he is entitled to monetary damages because he "was forced to stare at a wall for 24 hours per day" for eight months, id. at 2, and that such "extensive periods of sensory deprivation" amounted to torture, id. at 3.

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under Bivens. See 42 U.S.C. § 1997e(a);[5] see Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (stating that "section 1997e(a) applies to [plaintiff's] Bivens action"). Nevertheless, a prisoner such as Bautista is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits"

---

[5] The PLRA, at 42 U.S.C. § 1997e, provides:
> "(a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there a recognized exhaustion requirement, "the PLRA … requires proper exhaustion" as set forth in the applicable administrative rules and policies of the institution. Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Woodford, 548 U.S. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be

6

so opaque that it becomes, practically speaking, incapable of use." Id. In such a situation, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017).

### B. Bureau of Prison's Grievance Procedure

The Bureau of Prisons (BOP) provides an internal grievance procedure for its inmates. See 28 C.F.R. § 542.10, et seq. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process if the informal resolution procedures fail to resolve the issue.[6] As to the formal grievance procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 form to the Warden within twenty days of the incident. See 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on the BP-11 form to the General Counsel within thirty days of the Regional Director's response. See id.

### C. Bautista's Exhaustion Efforts

Defendant maintains that Bautista failed to properly exhaust his administrative remedies as to the First Amendment claim against him before filing the instant lawsuit. See Motion at 3-5. In support of his position, Defendant submitted the relevant grievance exhibits. See Doc. 29 at 13-35. According to BOP records, Bautista submitted a grievance and appeal relating to the publication ban: (1) Request for Administrative Remedy, No.

---

[6] A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." See 28 C.F.R. § 542.13(a).

934356-F1, received on March 15, 2018, see Doc. 29 at 22, and (2) Regional Appeal, No. 934356-R1, received on April 10, 2018, see Doc. 29 at 23; 13-15, Declaration and Certification of Records by Jeanie Register (Register Declaration). In the Register Declaration, she explained Bautista's exhaustion efforts.

> Computerized administrative remedy records maintained by the Bureau reveal that inmate Bautista is familiar with the administrative remedy process having submitted 31 administrative remedies during his incarceration. Specific to the allegations in the present case, records show that on March 15, 2018, the institution received administrative remedy number 934356-F1 from inmate Bautista complaining that magazines and newspapers should be authorized in the Special Housing Unit to all inmates. On March 20, 2018, the institution rejected the remedy stating that it "must be concerning oneself - not the inmate population (OTH)." Inmate Bautista was also instructed that he could resubmit his request in proper form within 5 days of the rejection notice (RSF).[7] There is no record that inmate Bautista resubmitted the request at the institutional level. On April 10, 2018, the Regional office received administrative remedy number 934356-R1 again complaining that he wanted magazines and newspapers [to] be authorized in the Special Housing Unit to all inmates. The remedy was rejected on May 2, 2018, and he was provided direction on how to cure the remedy (DIR).[8] There is no record that inmate Bautista filed any additional remedies related to this issue.

Register Declaration at 14 (enumeration omitted).

According to Bautista, the Warden rejected his grievance, and he appealed the Warden's rejection to the Regional Director, who concurred with the Warden and rejected the appeal. See SAC at 7. Bautista maintains that he did not appeal to the final level since "it appeared [he] could not file a grievance about the issue." Id. In his Response, he

---

[7] See Doc. 29 at 22.

[8] See Doc. 29 at 24.

maintains that the administrative grievance procedure was "incapable of use," Response at 4 (quoting Ross, 136 S. Ct. 1859), and therefore unavailable to him. He explains, in pertinent part:

> The USP Coleman II Warden and the Southeast Regional office both rejected the grievance filed by the Plaintiff concerning the publication ban. When the Plaintiff filed his BP-9 first stage remedy, Warden Charles Lockett rejected the grievance stating that the Plaintiff could not file a remedy concerning the whole inmate population. The rejection went onto [sic] state that the Plaintiff could resubmit his complaint on the "proper form," but failed to specify exactly what a proper form would be. Since the BOP's regulations failed to specify what exactly a proper form would be either, the Plaintiff appealed the rejection to the regional office. Without elaborating, the Regional office affirmed the rejection. The BOP's Administrative Remedy process is governed by 28 CFR 542. Per 542.17(c), a prisoner may appeal a rejection to the next highest level, at which point the BOP's staff m[a]y affirm or reverse the rejection. There is no requirement to appeal a rejection once it has been affirmed by the next highest level. Further, under the subpart titled "criteria for rejection," there was no basis for the BOP to reject the Plaintiff's remedy. Basis for rejection includes profanity, abusive language, or failure to comply with the procedural rules. A review of the rules reveals that no part prohibits the filing of a remedy which concerns an unconstitutional policy. Further, BOP policy 1330.18 instructs prison officials to "be flexible, keeping in mind that major purposes of (the administrative remedy) Program are to solve problems and be responsive to issues inmates raise." Nothing in that policy or Federal Regulations precluded the Plaintiff from filing a complaint over the publication ban. Here[,] the Plaintiff was not made aware of the prison administrator and Regional Office's predetermination that a remedy alleging an unconstitutional prison rule affecting the segregated prison population would not be accepted. Further, no guidance in the form of policy, Federal Regulation, or staff instruction existed as to what the "proper form" would be to circumnavigate the obscure and arbitrary rejection of the gr[ie]vance. Therefore, the second circumstance described by the Supreme Court in Ross v. Blake applies to make the exhaustion of Administrative Remedies impossible.

10

>               . . . .
>
>> Because the BOP's own rejections prevented the remedy system from being "capable of use for accomplishment of it[]s purpose" in the matter at bar, the Defendant's exhaustion claim must fail. The BOP cannot erect confusing, arbitrary, and insurmountable procedural hurdles for [the] purpose of ensuring an inmate's inability to exhaust his remedies, then rely on a failure-to-exhaust defense when the BOP itself was responsible for the inmate's inability to exhaust.

Response at 4-5 (capitalization omitted).

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Bautista's view of the facts as true, a dismissal of the claim against Defendant Taylor for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendant's arguments regarding exhaustion and makes findings of fact.

To fully exhaust, Bautista was required to resubmit the grievance and address the publication ban and its effect on him, not the entire SHU population. Bautista's assertion that the BOP's administrative grievance procedure was unavailable to him is unavailing. First, 28 C.F.R. § 542.10(a) states:

> The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. **An inmate may not submit a Request or Appeal on behalf of another inmate**.

Id. (emphasis added). Bautista acknowledges that Warden Lockett rejected the grievance, stating that Bautista was not permitted to file a request for administrative remedy concerning the whole inmate population, but could resubmit the grievance. See Response at 4. Next, according to Bautista, the BOP rules do not "specify exactly" what a "proper form" would be, and neither the Warden nor the Regional Office told him what "proper form" he needed to resubmit. See id. However, the BOP rules describe the "appropriate" forms to use when submitting a grievance and appeals. 28 C.F.R. § 542.14(a) (request for administrative remedy on the BP-9 form to the Warden); 28 C.F.R. § 542.15(a) (appeal on the BP-10 form to the Regional Director); see id. (appeal on the BP-11 form to the General Counsel). While Bautista attempted to exhaust the publication ban claim by submitting a grievance form to the Warden and an appeal to the Regional Office, he failed to properly exhaust because he failed to resubmit a grievance to the Warden and address how the publication ban affected him. See Register Declaration at 4. As such, Defendant Taylor's Motion is due to be granted with respect to the exhaustion issue as to Bautista's First Amendment claim against him.

Therefore, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 29) is **GRANTED,** and Bautista's claim against him is **DISMISSED** without prejudice for failure to exhaust his administrative remedies.

2. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** in Chambers, this 1st day of April, 2020.

                                                     MARCIA MORALES HOWARD
                                                     United States District Judge

sc 3/13
c:
Jordan Bautista
Counsel of Record